on behalf of Mr. Rivera. My hope is to reserve two minutes for rebuttal. Okay. In rebuttal closing argument, the prosecutor used the diagram that's on page 182 of the excerpts to argue that objective physical evidence showed that there was blood on the rocks behind where Agent Ambrose stepped onto the trail to confront Mr. Rivera. That served to confirm Agent Ambrose's trial testimony and give the lie to the prosecutor. Barely an hour earlier, the prosecutor's sidebar had told the judge that the evidence did not support that argument, and it beseeched the judge to allow the government to put on a rebuttal case to establish exactly that point. As a matter of fact, the prosecutor went so far as to say that the trial evidence was dramatically different than the evidence that they wanted to put on to support exactly the point. It doesn't really matter what the prosecution was saying at the sidebar. We have the transcript. We can go and look and figure out for ourselves whether there was evidentiary support for the argument that was made in closing argument, right? Well, yes. So why don't we look at – I focused on ER-115 rather than – parties seem to think ER-116 was the critical page. I thought there was adequate support on ER-115, so maybe you could address what's said there. And I believe that's the point at which Agent Gillespie says when I asked, you know, where is this blood evidence, is it down the trail towards Agent Mendez or is it up the trail towards where you and Agent Ambrose were? And he said it was up the trail. He didn't say anything, you know, as relevant to where did we step out as compared to where the blood evidence was. You have the page in front of you? Maybe you can take a look at it. I guess that's not how I read it. I thought he was asked. He was asked at ER-115. ER-115, 116. I'm thinking of looking at 115 first. He's asked about exhibit number five. That's the picture of the rocks, right? And the difficulty, just so we can get this – I'll just let you know where I went straight to those two pages, as did Judge Watford. And the difficulty I have is that so much of the testimony is in relation to – it's this up trail, down trail, and gestures in the courtroom. So on the stand, people are saying things like, over there, from here to there. Well, that works when you're in the courtroom. But it's why I looked at ER-211, where the district court said the testimony of Agent Gillespie, which was based on various physical locations within the courtroom, is extremely difficult to follow. Sure. And that's why I think what the prosecutor said to the judge at sidebar is important, because the prosecutor is the one that put on this evidence, and putting on the evidence, explaining to the jury where things happened, and said, I haven't established this point. And I think it's interesting, too, when you look at 211. The prosecutor said at ER-143 is, quote, we didn't say exactly where he came out. I think that means Ambriz. Ambriz? Do I have that name right? We didn't say exactly where he came out. And where he came out on that trail is critical. That's the prosecutor's view of the evidence. So what do we do with the fact that – I'm not trying to mess up your argument, but we are trying to hone it. And what do we do with the fact that – I think the point you're making is that the prosecutor thought very clearly, the prosecutor did not have that evidence in, and the prosecutor thought it was really critical evidence he said as much. But the district court is saying it's really hard to tell what you guys are talking about, because it's – the transcript refers to locations within the courtroom. What do we do with that? Sure. And I think when you look at the district court's finding – and this is just on one of the two prongs of the Maloney error, the misstatement of facts – it's interesting what the district court finds, because what she says is, the testimony you're relying on is ambiguous at best. And then she goes on to say, but I find it was a reasonable inference from Agent Gillespie's testimony. Then she says it was a close call. It almost seems as if she's saying, well, this is kind of a mistake. But when you look at what the prosecutor said at sidebar, and that they almost then immediately went and drew up this diagram and sat on it through their initial closing, through the defense closing, and then sprung it in some sort of encyclopedia brown gotcha moment in the rebuttal closing, that they understood that this wasn't established in the evidence. And the judge seems to be questioning it, too, because she also then jumps to, well, but even if it was misconduct, it was harmless error. And she applies the wrong harmless error test. She puts the burden on Mr. Rivera rather than on the government. And the burden's on the government to show beyond a reasonable doubt that this due process error was harmless. So I don't think that the judge gave a ringing endorsement to what the government did here. I think, as a matter of fact, she had some serious questions about it, which you can just tell by her own remarks. And all of this is on speculation. We don't have any real evidence. You're drawing a lot of inferences that we have no way of checking. I think she must have. Well, I'm relying on what the judge actually said. She said the testimony that they're relying on, the picture in Government's Exhibit 5, the testimony is ambiguous at best. And then she says it's a close call. Now, I agree. What does that mean, a close call? Very often, factual determinations are close calls, but there's nothing wrong with that. That occurs every day. No, but I guess what I'm saying is that I read her as saying, you know, it's not really clear here. And so that's why I think it's important to look at the prosecutors. You were reading that. That's correct. So we write the opinion, say, counsel says that, I mean, we can't write them that way. Well, you have to draw a lot of inferences from statements that I'm having difficulty following. Well, and that's why I think it's important to go back to what the prosecutor that put on the case said herself, which is that the evidence does not establish this. It's hard for me to follow something else that happened, and maybe you could clear that up. There's a sidebar. The prosecutor's insistent, didn't ask the question, need the question, and it really explains it's critical and wants to get it in, gets permission over objection, I think, to reopen and then doesn't. It's just sort of, oh, time to go home. And so the evidence never comes in. Is that right? That's right. They go right to closing. And at the risk of speculating, I think that there are two, from the record, there are two things that obviously could have driven that. One, the judge says, you can reopen. You can't do this in rebuttal. Reopening means the defense can put on more evidence. Two, the judge says a couple times, I don't know how anyone would know where he stepped out on the trail as compared to where the blood evidence is. It's the middle of the night. There's a trail in the middle of the hills. How could he actually say that? And maybe the government heard that. Let me just answer that. If you look at ER 15, Agent Gillespie is asked, from where you and Agent Ambrose were standing, where is this location in relationship to where you were standing before you came out on the trail? I took that to mean that he was asked, you know, the point at which you intercepted the folks, where were these rocks in relation to that? And he says, I would say about where Miss Stingly is. And then someone says that's about six to eight feet to the right. Sure. He says off to the right, but he doesn't say which direction the group of aliens came from. He says, so you're standing looking at the trail and that's off to the right. He says, yes, sir. And so the district judge is standing there watching the array of people there and can figure out directionally what they're talking about. And on your, I guess it was a motion for new trial, wasn't it, said that this was OK. Before you answer that, can I clarify just so that I can follow your answer to Judge Watford's question? Who's being questioned there? Is that Agent Ambrose or the other agent? That's Agent Gillespie, the other agent. And he's being asked, where were you both standing? Do we never hear from Ambrose where Ambrose was before he stepped out, do we? Not relevant to the blood evidence. OK, so then can you circle back to, if you can remember Judge Watford's question. Agent Gillespie says the blood's over to the, I'm guessing where Stingly was. He says to the right, but he doesn't say that the group came from the left, which would be where it was if Agent Ambrose was knocked back. He doesn't say. Or if his body was turned sideways to the trail. The problem, he could also mean across the trail. Sure, he could mean. It's difficult to know. He says on 116, this position, number five here, was it up the trail in the direction of travel that the group was going? Yes, sir. So that clarifies, it seems to me, that he's talking about they were coming this way. It's off to the right, up the trail. Well, I don't think so. And again, I'll circle back to the judge said it was ambiguous. The prosecutor put on the case said it wasn't established at all. And I think it's important, too, that you don't have, you have a responsibility of a client to ask questions, to clarify the record and could have been done. And indeed, the judge gave you an opportunity to not only reestablish the record, but to do so rebuttal. Why isn't this all waived? You had the opportunity at the time of the trial. You had the opportunity from the judge to clarify. The judge, the attorney did nothing. The judge said the government could reopen. She didn't just say that the defense could reopen. Without the government reopening, the defense couldn't reopen. The judge also didn't offer a rebuttal. When the judge says you should make a record, what was the judge talking about? I think she was, I'd have to look back at the record, but I think she was saying that you should put in the court exhibit, basically what the government, the drawing that the government used, and say what your objections were. But the judge said at the time, your objections were clear. As a matter of fact, if you look at the record, the objections are made before the prosecutor even starts speaking the words for the argument because they see that she's pulling this drawing out that she's hidden over in the corner. Now, just to be clear, now you're fast forwarding. What you're talking about right now is what's happening in closing. That's a different objection than I think what Judge Wallace was talking about. But if we're talking now about the drawing, you're clearly talking about closing arguments. Well, I think I'm going back because I think Judge Wallace is talking about post-closing argument. This is a really confusing fact pattern, so if you could just be really careful to sign post when you jump back and forth so we can follow you, that would be helpful. I understood Judge Wallace was talking about the conversation that counsel had with the court after the closing arguments were concluded. I don't want to wrap up without pointing out a couple of them. So just finish that thought because Judge Wallace's point was that you could have asked for a rebuttal, you could have made the record, you could have asked the question. You're speaking about closing arguments, you see, and he was asking. Sure, and my point was defense counsel during the actual closing argument objected before they even made the argument because they saw this diagram coming out and objected again during the argument and the judge overruled the objection. So there was no basis to ask for a surrebuttal. The judge had said there's no violation here. The judge had already ruled on this. Now, regarding, you know, the making of the drawing and holding it, the second prong of Maloney, the sandbagging, the prosecutor made that drawing right after this sidebar. Now, you'd think in a fair world where the prosecutor is trying to follow the rules, the prosecutor would say, you know what, Judge, I just told you the evidence doesn't support this argument, but I think I'm mistaken, I think it does, and I'm going to put up a drawing that shows the blood evidence relative to where they came out on the trail. I mean, that would be the responsible. That would be staying within the rules, which is what Ms. Duffy promised to this court, that they would do, stay well within the rules. That's not what they did at all. They sandbagged and they sat on it, and they knew they were sandbagging on it. She drew the thing after the sidebar before she even did her initial closing argument. You can tell by the record that's what happened. It's dirty pool is what it is. A few months after Ms. Duffy said that they would train the attorneys in that office not to do this, exactly this sort of thing. I sat through quite a few of these cases when I was on the court that this came from, where we do have a monopoly of criminal cases. My recollection is that you have a responsibility to show to counsel anything you're going to offer into evidence. This wasn't this, this was a diagram. And very often in closing argument, people use diagrams, they're not evidence, and I didn't know of any rule that you have to show diagrams that you're going to use in argument to counsel before you use them. Am I missing something, or is there a new rule that was there now that wasn't when I was district court? The rule that I'm speaking of for shorthand is basically you're not supposed to sandbag, and this was an entirely new argument that they deliberately held until the rebuttal argument when there was no chance to respond. There's a rule in the District of Southern California not sandbag? Yes, absolutely. It's inherent in the Maloney opinion. No, no, I'm talking about local rules. Oh, no, I don't think so. I think it's required by a due process clause. I see. All right. Thank you. I was running the wrong direction because I thought when you said rule that there was a local rule, but I see what you're saying now. No, I was referring to the rules of closing argument that Ms. Duffy said that her prosecutors would be trained on and that they would stay well within those rules. Would you like to reserve some time? I would, actually. Okay. I'll hear from the government. Good morning, Your Honors. May it please the Court, Mark Rady for the United States. Your Honors, the prosecutor did not misstate the evidence in closing argument. I know that this is an inherent fact pattern. As Judge Christin pointed out, it can be problematic, but that's only because of the nature of where this assault occurred. This wasn't a downtown Los Angeles assault where somebody could say, I'm standing on Broadway and Fifth. This is out in the middle of the wilderness, basically. Chaparral cover trails where there are no clear signposts. We understand. All that said, Your Honor, what I tried to draw in the brief and basically what the agents testified to when there were three agents out there but more aliens, they picked a specific area that was a bottleneck. And I described it in my brief as basically a tunnel. Counsel, we understand the facts, but could you go to the point that Judge Watford and I started on, which is it's at page 115, 116. Correct. And then the sidebar where it's really clear that the government was arguing, please let us get this in. We don't have it in. It's critical to our case. And then didn't reopen. So I understand you want us to look at 115 and 116 and focus on the fact that you think that testimony, which the judge thought was a little tough to follow because they're using sort of guideposts within the courtroom, and you think that supports the argument that in fact the evidence was there. I do, Your Honor. But, Counsel, the question is, this record's really clear to me and I would like, I mean it's truly an invitation, tell me what I'm missing. The government thought it didn't have the evidence in the record. The government thought it was critical to the case. Didn't reopen when given the opportunity over defense objection. And then I agree with defense counsel on this point, did spring that diagram in rebuttal closing. What am I missing? A few things, Your Honor. First of all, at no point in that sidebar did our prosecutors ever say there is no evidence to support where this location was. What they want... Prosecutors said was we didn't say exactly where he came out and where he came out on that trail is critical. Exactly. But that's, you know, it's like imagine if there was an assault that occurred in this courtroom. If this were an empty room and somebody came in and charged me and we had a picture of it and I said, you know what, I got hit here, I got pushed back this way, and there's blood over there. Now, if we had a picture and somebody asked me at trial, can you put a dot right where, exactly where you're standing, that makes the argument that much better. My whole point is this would be shocking to the conscience. And we're not stupid. If we saw our prosecutors literally tell an article to a judge, you know what, there is zero evidence. But that's not the case. And I think Judge Watford kind of hit on it. Oftentimes in the heat of battle, counsel, they're fighting over things that at the time seemed very important. I think what happened here was they realized that they did have enough evidence. Wait, okay, okay. Maybe you're getting to what I want. What am I missing? Where does it say they realized they had the evidence? Well, I think that's a fair inference, Your Honor. And I don't know if it's necessary for this claim. This claim is about misconduct. The question isn't whether it's the best argument that was made, whether it was a great argument, just is it permissible. And if you have evidence that this is basically a tunnel, aliens can only go two directions. They can either go forward towards Agent Ambrose or they can go back. Agent Gillespie testified that the bloody rocks were up the trail in the direction that the aliens were going, whereas this is down the trail. I really understand the up the trail, Dan. They've been all over page 115, page 116. All right. But then my point is if that's the case, then why doesn't that support a reasonable inference? I'm not answering my question. Well, okay. I'm trying to. It's not whether we can go back and look at the evidence and say, oh, they lucked out. There's a place in the transcript where maybe the evidence could have been construed that way. I'm asking a different question. My question is what do we do with the fact that the prosecutor thought at the time that he didn't have the evidence in the record and thought it was  where there wasn't an opportunity to respond. Why isn't that unfair? Because the question I thought fundamental fairness was, is there a reasonable inference from the argument as it is? So I understand your argument now to be what I suggested, and I didn't mean to be pejorative, but what you're telling me is since you could go back and find a place in the record at 115, 116 where the inference could be drawn, then the prosecutor who said it was critical and said they didn't have it because that was mistaken, then this is permissible. It's permissible, Your Honor. I mean, maybe I'm not, I understand you and I apologize. I'm just trying to do the best I can here. What they're saying is we have evidence already. We have a picture. We want to have Agent Ambrose come up and put a red dot exactly where he was. And at the time they thought that exactly pinpointing was critical. That's what advocates do in trial. What I'm saying is unless I'm missing something for an advocate then to pull back after the sidebar and realize, hey, maybe we don't need this, then shouldn't the question be was it objectively reasonable from the record? I would think that it would be misconduct for a prosecutor to misstate facts in the evidence to make inferences that have zero basis in the evidence. The statements of counsel aren't evidence, Your Honor. If here we have testimony that you only can go in two directions, Agent Ambrose and Agent Gillespie confirmed that the defendant charged me, pushed him back two steps. Agent Ambrose said as we fell, the defendant fell forward. Then Agent Ambrose continued to testify that the defendant crawled forward, kept moving forward in the direction of the rocks where his head hit and where blood was found. On those facts, is it a violation of due process? These are serious allegations that my opponent's making. I would think that the question is, well, is it an inference from the evidence? And it would appear that it is. Now, as far as the ---- Now, the prosecutor thought it wasn't at the time. That's his point. No, I know, Your Honor. If there was a part in the record where Ms. Stingley says, Your Honor, there is no evidence to support my argument, and then 30 minutes later tells the jury something, we wouldn't be here, we would have confessed error, that's not what she's ---- But what she said, actually it wasn't Ms. Stingley, but we didn't say exactly where he came out on the trail at ER 143. Where he came out is critical. That's opposing counsel's argument. Right. And that's about pinpointing it. I mean, imagine if we had somehow like a Fitbit on the agent and we could have gotten GPS testimony to show the exact place on the planet. That would be even better evidence. That would be exactly where he was. That's all they're saying is we don't have exactly where he was. I mean, it's a question of degree, but I think that's important. It's not like the prosecutor is saying there is no evidence here. They're saying, you know what, at that sidebar, we want to fight for even better. We want to say exactly where it was. All I'm saying is, short of that evidence, is it still a reasonable inference from the record? And the district judge who sat through the whole trial in United States v. McWilliams, this court says that we give deference to the trial judge's views of the matter because he or she is the one who sat through it all. That's what Judge Sammartino observed. So if it's a reasonable inference, it can't be misconduct. Now, as far as the springing part, as this court knows, advocates have a lot of latitude in closing argument. The question is, is it responsive? The excerpt of Record 158, what the defense said in their closing was, basically, ladies and gentlemen, we're not saying that the defendant did nothing wrong, but this is the quote, but he didn't strike the agent. He did exactly what he told you he did. He turned away. Now, right there, that is the defense putting the entire prosecution case in dispute, saying, you know what, everything Agent Ambrose and Agent Gillespie said isn't true. We didn't charge him, or my client didn't charge him. He didn't step back a few steps. Instead, he turned and ran away the other direction. That being so, this argument ---- He didn't say he turned and ran. He said he turned and crashed into the person behind him and fell. Well, the statement in closing is he turned away. And his testimony ---- That's different. That's quite different. But go ahead. Well, correct. But if you're right, if the only thing the client said was that I turned around and I ran ---- He didn't say he turned around and ran. He said he tried to run. Counsel, that distance, I'm not trying to be picky, but that distance or whether there was any distance that was covered is critical in the context of this appeal. Correct. Which is why I've said since the beginning, if you have Agent Ambrose and Agent Gillespie testifying on pretty much a tunnel that I got charged, I got pushed back two steps, the defendant fell forward, kept crawling forward, kept moving in direction of Government's Exhibit 5, that's the government's statement. When the defense says instead I turned around or he turned away, that's opposite. And, therefore, that is what the prosecutor was responding to in rebuttal. I understand your argument. Do my colleagues have other questions? Anything further? Nothing further, Your Honor. Thank you. Thank you. I just looked back over pages 115 to 116, and I sort of stand by what I said before, and I think what's even more interesting is what he seems to be orienting, the prosecutor seems to be orienting Agent Gillespie to is, is this blood likely from where the scuffle happened? Because he says, okay, whereabouts was it in relation to you, and was it down near Mendez or was it up near Gillespie? Because he says, he then asks, is there a handprint in it? Yeah, so that suggests that's where the struggle happened. There are no more questions. There's no more orienting to where did you step out on the trail. So I think that answers the court's question. And then they finish the questioning right there. I see the court's not convinced. Well, it does refer to the direction where Mendez was. That's what Judge Washburn's point is. It's not just 116, which I think is quoted in your brief. It's also 115. You have to look at both. Sure, but he asked where's the location to where you were standing before you came out on the trail, where Miss Stingley is to the right. And then he says, was this location, number five, the blood, was that down towards Mendez or was it up towards where you and Ambrose were? So that seems to me to be a much more general question. And I'd also refer back to the fact that, you know, how would they know? As the judge said, how would they know? It seems implausible that they would know, and there never was specific testimony. I also would point out on page 136 of the ER, the prosecutor says, the evidence that the jury has is dramatically different than this evidence that we want to introduce. I don't think it could be much more clear. And finally, on the sandbagging thing, they drew this thing before they gave their initial closing argument. They should have referred to it during their initial closing argument if they thought it was appropriate. They obviously sat on it. They were going to use it regardless of what happened. And there was no discussion of the defense closing. I don't know how you define this. In trying lawsuits, I often had things I didn't know whether I was going to use or not, but I was prepared to use it. Now, you're drawing a lot of inferences of the thinking of people, for which there's nothing in the record. But there are other obvious areas. Now, why should we write opinion saying the defense attorney says they were thinking this when there's no evidence, the evidence in the record, it could go either way. They were either well prepared for anything that's going to happen or they're trying to trick you. And the judge had to make a determination. As the judge said in denying the government's rebuttal trial case, look, we've all known what the dispute is. The dispute was evident in Mr. Rivera's post-trial statement. It was evident in opening statements. It was evident in his testimony. It's just did he turn and run and have Agent Rivera run him over from behind and retrip? You've covered this several times. But you leave it open, it seems to me. The judge was there. The judge did not do anything saying the prosecutors are out of line, did they? The judge did not disagree that the prosecutors sandbagged. What she did is said, I'm not going to give a remedy because you should have asked for a surrebuttal. And that ignores the fact that they objected when it was going on, and the judge overruled the objections. That is exactly what the government in Maloney said a defendant should do, is object contemporaneously. They did that, and it was overruled. Unless the court has any further questions. Thank you. Nothing further. Thank you. The next case on the calendar is
judges: Wallace, Christen, Watford